IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERICAN AXLE & MANUFACTURING, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 15-1168-LPS-CJB ) |
| NEAPCO HOLDINGS LLC and NEAPCO DRIVELINES LLC, | ) ) ) ) |
| Defendants. | ) |

## [PROPOSED] STIPULATED ESI ORDER

**WHEREAS**, Plaintiff American Axle & Manufacturing, Inc. and Defendants Neapco Holdings LLC and Neapco Drivelines LLC (collectively, the "Parties") are engaged in litigation in the above-captioned matter;

**WHEREAS,** the Parties previously agreed to meet and confer in good faith to enter into an agreement regarding electronically stored information ("ESI") (*see* D.I. 28, Scheduling Order at 2, n.1);

**WHEREAS,** the Parties mutually seek to reduce the time, expense and other burdens of discovery, as described further below, and to better define the scope of their obligations with respect to preserving, collecting, and producing discoverable information and materials;

The Parties stipulate as follows:

Except as noted below, the Parties agree that the following instructions ("Instructions") apply to the production of ESI, including e-mail and other electronic documents, and "paper" documents in an electronic format. The Parties agree that the principles of cooperation, transparency, and proportionality as set forth in Federal Rule of Civil Procedure 26(b) will guide

their application of the Instructions. The Parties agree to meet and confer in good faith to resolve any disputes arising under these Instructions. The Parties agree that they may bring these Instructions to the Court's attention to the extent that they are unable to resolve any such dispute after a good faith meet and confer.

1. **General Provisions**

   a. **Cooperation.** Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-36. In the event that the Parties are unable to agree on the parameters and/or timing of discovery or these Instructions do not otherwise address a particular issue, the Default Standard shall apply until further order of the Court or the Parties reach agreement.

   b. **Proportionality.** Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information[1]. This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

   c. **Preservation of Discoverable Information.** A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

      (i) Absent a showing of good cause by the requesting party, the Parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the Parties shall preserve

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

the non-duplicative discoverable information currently in their possession, custody or control.

(ii) Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

d. **Privilege.**

(i) The Parties are to confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

(ii) With respect to information generated after the filing of the complaint, Parties are not required to include any such information in privilege logs.

(iii) Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

(iv) The Stipulated Protective Order entered in this case (D.I. 32) shall apply, including with regard to inadvertent production.

e. **Rolling Production.** Documents responsive to discovery requests will be produced by forwarding them to opposing counsel in the agreed ESI format as soon as practical after they are available, without awaiting the completion of processing of other documents responsive to a request for production. The Parties will in good faith work to complete their production of documents to the unobjected scope of an opponent's request.

2. Disclosure of ESI Sources. Pursuant to paragraph 3 of the Default Standard, the parties have exchanged initial disclosures listing custodial and non-custodial data sources. To the extent additional sources are identified during discovery, searches of additional custodial and non-custodial data sources may be allowed, and the Parties will meet and confer in good faith in an attempt to address a party's assertion that additional data sources should be searched.

a. **Notice.** The Parties shall identify any issues relating to:

(i) Any ESI (by type, date, custodian, electronic system or other criteria) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i) and is not otherwise of one of the categories listed in Schedule A.

(ii) Third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery.

(iii) Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws.

Lack of proper notice of such issues may result in a party losing the ability to pursue or to protect such information.

3. **Specific E-Discovery Issues.**

a. **On-site inspection of electronic media.** Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

b. **Search methodology.** Notwithstanding any provision or protocol herein, the parties reserve the right to move the Court for the production of additional ESI for good cause.

(i) **Non-email ESI.** Non-email ESI will be collected in the same way as paper documents—namely, by conducting a good faith search for non-email ESI and paper documents responsive to a party's discovery requests according to the search protocol described herein. Documents identified through the Parties' searches will be produced in accordance with these Instructions and the Federal Rules of Civil Procedure. The parties agree to make a reasonable, good-faith effort to identify and locate the files, folders, media, etc. that are likely to contain any responsive non-email ESI, and make a diligent search of those files for responsive non-email ESI.

The producing party shall search (i) the non-custodial data sources previously identified in accordance with paragraph 3 of the Default Standard; and (ii) other ESI maintained by the custodians identified in accordance with paragraph 3(a).

    (ii)  **Email ESI.** The parties agree to locate potentially responsive email ESI according to the following procedure. Production of email ESI shall be phased to occur after the parties have exchanged initial productions of non-email ESI but prior to the deadline for substantial completion of document production. Each requesting party may request search terms on a custodian basis for email ESI for up to the ten (10) custodians identified pursuant to paragraph 3 of the Default Standard. The Parties will meet and confer in the event that additional custodians are identified during discovery pursuant to paragraph 3 above and more than ten (10) custodians need to be searched.

Each requesting party shall limit its request to ten (10) search terms for all the custodians. The parties may jointly agree to modify this limit without the Court's leave. The parties will work together to agree on the search terms to be run. The Court shall consider contested requests for up to five additional search terms, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Focused terms, rather than over-broad terms (e.g., product and company names), shall be employed. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production.

If, after a producing party runs the agreed upon search terms, the result set is unreasonably high for a particular term, the producing party shall determine the number of items identified by the requested term and provide such information to the requesting party. The Parties shall, after conferring and coming to an agreement, modify the lists of search terms in the event that the number of items identified by a search is unreasonably high.

    **(iii)**  **Format.** ESI and non-ESI shall be produced to the requesting party as text-searchable image files (e.g., PDF or TIFF). When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history. The parties shall produce their information in the following format: single page TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information including relevant metadata.

  c.  **Native files.** The only files that should be produced in native format are files not easily converted to image format, such as Excel and Access files.

  d.  **Metadata fields.** The parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists: Custodian, File Path, Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Date Modified, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

  e.  **ESI De-Duplication.** Prior to producing ESI, the Parties may remove ("de-dupe") any duplicative documents on a family basis across all sources of ESI, such that only one copy of any ESI document need be produced. As an example, no party shall remove through de-

duplication any attachment to any email, regardless of whether the attachment is duplicative of any other document, but the parties may de-duplicate emails that are identical. De-duplication for review followed by re-duplication for production is not allowed.

      f.      **Electronic Bates Convention.** The electronic Bates numbering shall be a unique number common to each page. Format should be: PREFIX and numeric digits (e.g., PRE0000001). The numbering convention shall be consistent throughout the rolling production. Responsive and non-privileged e-mail attachments shall be produced and Bates numbered consecutively subordinate to the "parent" e-mail or other parent items so that the family (parent/child) relationship is maintained.

# SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6. Voice messages.

7. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

8. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Server, system or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.

AGREED AND STIPULATED TO:

| | |
|---|---|
| */s/ Jeffrey T. Castellano* | */s/ Robert M. Vrana* |
| John W. Shaw (No. 3362) | Melanie K. Sharp (No. 2501) |
| Jeffrey T. Castellano (No. 4837) | Robert M. Vrana (No. 5666) |
| SHAW KELLER LLP | YOUNG CONAWAY STARGATT & TAYLOR LLP |
| 300 Delaware Avenue, Suite 1120 | |
| Wilmington, DE 19801 | 1000 North King Street |
| (302) 298-0701 | Wilmington, DE 19801 |
| jshaw@shawkeller.com | (302) 571-6681 |
| jcastellano@shawkeller.com | msharp@ycst.com |
| *Attorneys for Plaintiff American Axle & Manufacturing, Inc.* | rvrana@ycst.com |
| | *Attorneys for Defendants Neapco Holdings LLC and Neapco Drivelines LLC* |
| OF COUNSEL: | |
| James R. Nuttall | OF COUNSEL: |
| Katherine H. Johnson | J. Michael Huget |
| Randal S. Alexander | HONIGMAN MILLER SCHWARTZ & COHN LLP |
| STEPTOE & JOHNSON LLP | |
| 115 South LaSalle Street | 315 East Eisenhower Parkway |
| Suite 3100 | Suite 100 |
| Chicago, IL 60603 | Ann Arbor, MI 48108 |
| (312) 577-1300 | (734) 418-4200 |
| Boyd Cloern | Brian J. Arnold |
| STEPTOE & JOHNSON LLP | HONIGMAN MILLER SCHWARTZ & COHN LLP |
| 1330 Connecticut Avenue, N.W. | |
| Washington, DC 20036 | One South Wacker Dr., 28th Floor |
| (202) 429-6407 | Chicago, IL 60606 |
| | (312) 701-9300 |
| Dated: July 13, 2016 | |

SO ORDERED this ___ day of _____, 2016.

_____
United States District Judge