IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERICAN AXLE & MANUFACTURING, INC., <br><br> Plaintiff, <br><br> v. <br><br> NEAPCO HOLDINGS LLC and NEAPCO DRIVELINES LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> C.A. No. 15-1168-GBW |

**AMERICAN AXLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(a)**

Plaintiff American Axle & Manufacturing, Inc. ("American Axle") respectfully moves for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) on the following grounds. American Axle incorporates by reference the Rule 50(a) motions and arguments it made at trial in the above-captioned case. American Axle presents this motion to preserve its rights for post-trial proceedings and appeal.

1. American Axle moves judgment as a matter of law under Federal Rule of Civil Procedure 50(a) that defendants Neapco Holdings LLC and Neapco Drivelines LLC ("Neapco") infringes claims 1–6, 12, 13, and 19–21 of U.S. Patent No. 7,774,911 ("the '911 patent) (collectively, "Asserted Claims") under 35 U.S.C. § 271 for at least the following reasons:

   a. A reasonable jury would not have a legally sufficient evidentiary basis to find that Neapco does not infringe the Asserted Claims.

   b. A reasonable jury would not have a legally sufficient evidentiary basis to find that Neapco does not literally practice each and every limitation of the Asserted Claims.

   c. A reasonable jury would not have a legally sufficient evidentiary basis to find that

1

  Neapco does not perform the method step of "providing a hollow shaft member," including because Neapco does not allege non-infringement of this limitation and did not introduce evidence of non-infringement.

d. A reasonable jury would not have a legally sufficient evidentiary basis to find that Neapco does not perform the method step of "tuning at least one liner to attenuate at least two types of vibration transmitted through the shaft member" as recited in the Asserted Claims, construed to require "controlling characteristics of at least one liner to configure the liner to match a relevant frequency or frequencies to reduce at least two types of vibration transmitted through the shaft member," including because Neapco's non-infringement theory requires intent, which is irrelevant to infringement, and because the record evidence including Neapco documents and testimony of Neapco witnesses show that Neapco controlled characteristics of the liners for the accused products to match relevant frequencies to reduce at least two typos of vibration.

e. A reasonable jury would not have a legally sufficient evidentiary basis to find that Neapco does not perform the method step of "positioning the at least one liner within the shaft member such that the at least one liner is configured to damp shell mode vibrations in the shaft member by an amount that is greater than or equal to about 2%, and the at least one liner is also configured to damp bending mode vibrations in the shaft member, the at least one liner being tuned to within about ±20% of a bending mode natural frequency of the shaft assembly as installed in the driveline system." American Axle presented substantial evidence, including testing of the accused products, that the accused products damp shell mode vibrations more

than 2 percent and that the accused products are tuned to within about 20 percent of a bending mode natural frequency. American Axle's testing was performed with the accused propshafts in a pinned-pinned condition on a bench, which American Axle's expert and Neapco and other fact witness confirmed is standard practice for evaluating driveline vibration as it would occur in the vehicle.

    f. A reasonable jury would not have a legally sufficient evidentiary basis to find that Neapco does not infringe dependent claims 2–6, 12, 13, and 19–21 to the extent claim 1 is found to be infringed.[1] Neapco contends that these claims are not infringed for the same reasons that Neapco contends claim 1 is not infringed and therefore it does not have a separate basis for non-infringement of the dependent claims.

    g. A reasonable jury would not have a legally sufficient evidentiary basis to find that Neapco does not practice the methods of the Asserted Claims in the United States.

American Axle's technical expert Dr. Rahn explained how each and every limitation of the Asserted Claims is literally practiced with regard to the accused products, relying on Neapco's own design documents showing that Neapco selected and manufactured liners that match relevant frequencies for two types of vibration in the accused propshafts, testing data that demonstrates that the accused products meet the limitations of the Asserted Claims, stipulated facts regarding the accused products and Neapco's admissions in response to American Axle's discovery requests. In response, Neapco and their infringement expert Mr. Becker did not introduce any contrary testing,

---

[1] Neapco infringes claims 1-6, 12, 13, and 19-21 when it manufactures the accused 4.5-inch propshafts. Neapco infringes claims 1 and 2 when it manufactures the accused 5.0-inch propshafts. Neapco infringes claims 1 and 2 when it manufactures all of the accused 5.775-inch propshafts, and claims 3, 5, 6, 12, 13, and 19-21 when it manufactures the 489 and 643 5.775-inch propshafts.

and instead focused on a legally unsupportable theory that direct infringement requires an intent to infringe.

2.  American Axle moves for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on American Axle's damages claim for Neapco's patent infringement, including judgment (a) that American Axle is entitled to lost profits under 35 U.S.C. § 284 in the amount of $4,410,759 for the accused 4.5-inch propshafts and $5,615,948 for the accused 5.0-inch propshafts; and that (b) that American Axle is entitled to a reasonable royalty under 35 U.S.C. § 284 in the amount of between $7 and $10 per unit because a reasonable jury would not have a legally sufficient evidentiary basis to find that American Axle is not entitled to lost profits or at a minimum a reasonable royalty in the amounts set forth above.

American Axle's expert Mr. Hansen provided extensive testimony regarding American Axle's lost profits, applying the relevant *Panduit* factors, and testimony regarding the proper amount of reasonable royalty damages, applying the relevant *Georgia-Pacific* factors. Neapco's expert conceded that the first Panduit factor is met, and with regard to the second factor, Neapco does not contest that there are no non-infringing alternatives that damp two modes of vibration. With regard to the third factor, Neapco's expert did not rebut Mr. Hansen's detailed capacity analysis. Finally, Neapco's expert did not challenge Mr. Hansen's lost profits calculation. Regarding reasonable royalty, Mr. Hansen's analysis under the *Georgia-Pacific* factors relied on real-world price increases for Neapco's accused products tied to the use of a tuned liner. In contrast, Neapco's evidence regarding reasonable royalty is tied to the costs of liners used in steel – not aluminum – propshafts, and Neapco's low estimated profits, resulting from their low prices and failure to pay for the patented invention.

3.  American Axle moves for judgment as a matter of law under Federal Rule of Civil

Procedure 50(a) on Neapco's defense of invalidity under 35 U.S.C. § 102 (anticipation).

    a. A reasonable jury would not have a legally sufficient evidentiary basis to find that the Asserted Claims are anticipated by the 2003 Econoline Propshaft.

    b. A reasonable jury would not have a legally sufficient evidentiary basis to find that each and every limitation of the Asserted Claims are disclosed by the 2003 Econoline Propshaft.

Neapco's expert Mr. Becker relies upon testing of the Econoline propshaft and liner frequencies to show anticipation. But that testing is insufficient to establish that the claims are anticipated at least because there is no reliable evidence that the Econoline propshaft meets the requirements of the claims. The data relied up on by Mr. Becker, including the testing of liner frequencies and the testing of damping, are unreliable. For example, Neapco's expert Mr. Becker opined in his original report that testing data showed just a fraction of a percent of attenuation of shell mode vibration. Then, Mr. Becker reanalyzed that same data and found 28 percent damping. His analysis is therefore unreliable and cannot support a finding of anticipation by clear and convincing evidence. Moreover, the Econoline propshaft is cumulative of other prior art untuned cardboard liners that were before the prior art.

Thus, there is legally insufficient evidence of anticipation of at least limitations 1(c), 1(f) and 1(e) of claim 1. For the same reasons, the dependent claims are not anticipated.

4. American Axle moves for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on Neapco's defense of indefiniteness under 35 U.S.C. § 112. A reasonable jury would not have a legally sufficient evidentiary basis to find that the Asserted Claims are indefinite, or that a person of ordinary skill would not understand the scope of the Asserted Claims.

Neapco first argues that boundary conditions and temperature create different results. But Dr. Rahn and GM noise, vibration and harshness ("NVH") engineer Mr. Mahnken, as well as inventor Dr. Sun, and AAM engineer Mr. Steyer testified that frequency testing of propshafts is done at room temperature. The evidence – including admission of Neapco's expert Mr. Becker on cross examination – shows that bench testing and in-vehicle testing produces similar results within the limits of natural variation. Neapco's NVH engineer testified that Neapco performed impact hammer testing on propshafts mounted on a balancer "as it would be in the vehicle", which Dr. Rahn confirmed means it was mounted on a bench.

Next, Neapco asserts that a POSITA would not know what excitation source to use. But Neapco's head of engineering testified that hammer testing of propshafts was done before AAM and is "a pretty common test that everybody does in the industry." Mr. Mahnken testified that impact hammer testing is "a common tool of the job." Neapco's NVH engineer testified that Neapco performed impact hammer testing on propshafts mounted on a balancer when testing for bending and shell modes in propshafts and designing liners to have resonant frequencies that matched with bending mode frequencies.

Finally, Neapco argues that the number of accelerometers can impact test results, but there is no testimony or evidence that a POSITA would not know how many accelerometers to use or how to place them to test for infringement. Dr. Rahn used four. Neapco NVH engineer Mr. Roman used "about seven." The fact that Neapco's third-party testing on the Econoline used more does not render the claims invalid.

5. American Axle moves for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on Neapco's defense of lack of written description under 35 U.S.C. § 112. A reasonable jury would not have a legally sufficient evidentiary basis to find that the Asserted

Claims lack written description, or that a person of ordinary skill would not understand that the inventors were in possession of the claimed invention.

Neapco's expert did not provide any testimony or opinion regarding written description whatsoever. Dr. Rahn testified that the '911 patent discloses the existing problem (multiple modes of vibration in drivelines), the solution (tuned liners), and other information regarding vibration and damping that a person of ordinary skill would understand from the disclosure of the '911 patent. The law of written description does not require disclosure of examples, or all of the specifics regarding test conditions or setup, and the evidence in this case shows that a person of ordinary skill would understand that the inventors of the '911 patent were in possession of a method of manufacturing liners tuned to shell and bending mode, as set forth in the Asserted Claims.

| | |
|---|---|
| Date: January 29, 2024 | Respectfully Submitted, |
| **OF COUNSEL:** | */s/ Jeff Castellano* |
| | Brian A. Biggs (DE Bar No. 5591) |
| James R. Nuttall | Jeff Castellano (DE Bar No. 4837) |
| John L. Abramic | **DLA PIPER LLP (US)** |
| Katherine H. Johnson | 1201 North Market Street, Suite 2100 |
| Robert F. Kappers | Wilmington, DE 19801 |
| **STEPTOE LLP** | Telephone: (302) 468-5700 |
| 227 W. Monroe Street, Suite 4700 | Facsimile: (302) 394-2341 |
| Chicago, IL 60606 | brian.biggs@us.dlapiper.com |
| Telephone: (312) 577-1300 | jeff.castellano@us.dlapiper.com |
| jnuttall@steptoe.com | |
| jabramic@steptoe.com | *Attorneys for Plaintiff* |
| kjohnson@steptoe.com | |
| rkappers@stepto.com | |

Boyd Cloern
**STEPTOE LLP**
1330 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: (202) 429-6407
bcloern@steptoe.com

8