**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AMERICAN AXLE & MANUFACTURING, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | C.A. No. 15-1168-GBW |
| NEAPCO HOLDINGS LLC and NEAPCO DRIVELINES LLC, | ) ) ) | |
| Defendants. | ) ) | |

**AMERICAN AXLE & MANUFACTURING, INC.'S**
**AMENDED OPENING BRIEF IN SUPPORT OF:**

**(1) AAM'S UNOPPOSED MOTION FOR SUPPLEMENTAL DAMAGES;**

**(2) AAM'S MOTION FOR PRE-JUDGMENT INTEREST;**

**(3) AAM'S UNOPPOSED MOTION FOR POST-JUDGMENT INTEREST; AND**

**(4) AAM'S MOTION FOR A PERMANENT INJUNCTION OR, IN THE ALTERNATIVE, FOR AN ON-GOING ROYALTY**

_____

# TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE CASE AND SUMMARY OF THE
      ARGUMENT ........................................................................................................ 1

II.   ARGUMENT ........................................................................................................ 1

      A.    The parties agree that the Court should award $1,060.00 in supplemental
            damages............................................................................................................ 1

      B.    The Court should award pre-judgment interest. ...................................... 1

            1.    The Court should award pre-judgment interest on both the jury's
                  damages award and AAM's supplemental damages. ............................... 2

            2.    The parties agree that pre-judgment interest should be calculated
                  using the prime rate and compounded quarterly........................................ 2

            3.    Pre-judgment interest should be calculated continuously from the
                  date of Neapco's first infringement, October 2014, through
                  judgment on February 7, 2024. ................................................................. 2

            4.    Pre-judgment interest should be calculated by distributing the
                  infringing sales across the applicable quarters for calculating
                  interest....................................................................................................... 6

            5.    The Court should award $1,196,900.00 in pre-judgment interest. ............ 6

      C.    The Court should award post-judgment interest.................................................... 6

      D.    The Court should permanently enjoin Neapco against continued
            infringement with a limited carve-out or, alternatively, impose an on-
            going royalty. ................................................................................................... 6

            1.    The Court should permanently enjoin Neapco. ......................................... 7

                  a)    AAM will suffer irreparable harm. .................................................. 7

                        (1)   AAM suffered irreparable harm and, absent an
                              injunction, will continue to suffer irreparable harm. .......... 7

                        (2)   A causal nexus relates AAM's irreparable harm to
                              Neapco's infringement of the '911 patent. ...................... 11

                  b)    Remedies at law, including monetary damages, are
                        inadequate to compensate AAM for its injury............................. 12

                  c)    The balance of hardships favors a permanent injunction.............. 14

                  d)    The public interest would not be disserved.................................. 15

2.      The Court should, alternatively, impose an on-going royalty for Neapco's continued infringement at a rate in the range of $13.00/propshaft to $24.00/propshaft. ...................................................... 17

III.     CONCLUSION................................................................................................. 20

ACTIVE\1608366923.1

## **<u>TABLE OF AUTHORITIES</u>**

**Cases**                                                           **Page(s)**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
No. 2:10CV248, 2011 WL 4899922 (E.D. Va. Oct. 14, 2011) ................................................2

*Agrofresh Inc. v. Essentiv LLC*,
No. CV 16-662 (MN), 2020 WL 7024867 (D. Del. Nov. 30, 2020) .......................................2

*Allen Archery, Inc. v. Browning Mfg. Co.*,
898 F.2d 787 (Fed. Cir. 1990)............................................................................................4, 5

*Apple Inc. v. Samsung Elecs. Co.*,
809 F.3d 633 (Fed. Cir. 2015).................................................................................11, 15, 16

*ArcherDX, LLC v. Qiagen Scis., LLC*,
No. CV 18-1019 (MN), 2022 WL 4597877 (D. Del. Sept. 30, 2022) ...................................17

*Arctic Cat Inc. v. Bombardier Recreational Products Inc.*,
876 F.3d 1350 (Fed. Cir. 2017)...........................................................................................19

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*,
670 F.3d 1171 (Fed. Cir. 2012)...........................................................................................19

*Broadcom Corp. v. Emulex Corp.*,
732 F.3d 1325 (Fed. Cir. 2013)..........................................................................8, 13, 18, 19

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012).............................................................................................15

*Cordis Corp. v. Bos. Sci. Corp.*,
99 F. App'x 928 (Fed. Cir. 2004) .........................................................................................15

*DDR Holdings, LLC v. Hotels.com, L.P.*,
No. 2:06-CV-42-JRG, 2013 WL 3187163 (E.D. Tex. June 20, 2013) ....................................5

*Dominion Res. Inc. v. Alstom Grid, Inc.*,
No. CV 15-224, 2016 WL 5674713 (E.D. Pa. Oct. 3, 2016 ..................................................11

*Douglas Dynamics, LLC v. Buyers Prod. Co.*,
717 F.3d 1336 (Fed. Cir. 2013)..................................................................................... *passim*

*eBay v. MercExchange*,
547 U.S. 388 (2006)....................................................................................................... *passim*

*Grp. One, Ltd. v. Hallmark Cards, Inc.*,
407 F.3d 1297 (Fed. Cir. 2005)............................................................................................3

ACTIVE\1608366923.1

*Hughes Tool Co. v. Dresser Indus., Inc.*,
    816 F.2d 1549 (Fed. Cir. 1987)........................................................................................3

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010)..........................................................................12, 14, 16

*Krippelz v. Ford Motor Co.*,
    670 F. Supp. 2d 815 (N.D. Ill. 2009) .............................................................................5

*Lummus Indus., Inc. v. D.M. & E. Corp.*,
    862 F.2d 267 (Fed. Cir. 1988)........................................................................................4

*Mars, Inc. v. Coin Acceptors, Inc.*,
    513 F. Supp. 2d 128 (D.N.J. 2007) ..............................................................................3, 4

*Mondis Tech. Ltd. v. Chimei Innolux Corp.*,
    No. 2:11-CV-378-JRG, 2012 WL 1554645 (E.D. Tex. Apr. 30, 2012) ...............................2

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    449 F. App'x 923 (Fed. Cir. 2011) ...............................................................................10

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    No. CV 08-309-LPS, 2014 WL 2960035 (D. Del. June 30, 2014)................................. *passim*

*PPG Industries, Inc. v. Guardian Industries Corp.*,
    75 F.3d 1558 (Fed. Cir. 1996).......................................................................................15

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    875 F.3d 1369 (Fed. Cir. 2017)..................................................................................7, 11

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011)....................................................................................14

*Sensonics, Inc. v. Aerosonic Corp.*,
    81 F.3d 1566 (Fed. Cir. 1996).........................................................................................1

*Spectralytics, Inc. v. Cordis Corp.*,
    650 F. Supp. 2d 900 (D. Minn. 2009) .....................................................................14, 16

*SynQor, Inc v. Artesyn Techs., Inc.*,
    No. 2:07-CV-497-TJW-CE, 2011 WL 238645 (E.D. Tex. Jan. 24, 2011) ....................7, 9, 10

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
    612 F.3d 1365 (Fed. Cir. 2010)....................................................................................17

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
    No. CV 04-876-GMS, 2014 WL 1457797 (D. Del. Apr. 14, 2014) ...............................19

ACTIVE\1608366923.1

*TiVo Inc. v. EchoStar Corp.*,
    646 F.3d 869 (Fed. Cir. 2011) (*en banc*) ............................................................7, 16

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
    782 F.2d 995 (Fed. Cir. 1986)................................................................................14

*Wonderland Switzerland AG v. Evenflo Co., Inc.*,
    No. 1:20-CV-00727-JPM, 2023 WL 4098571 (D. Del. June 7, 2023)........................... *passim*

*XY, LLC v. Trans Ova Genetics*,
    890 F.3d 1282 (Fed. Cir. 2018)........................................................................17, 18

**Statutes**

35 U.S.C. § 101 ................................................................................................................2

ACTIVE\1608366923.1

## TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| 1 | Neapco's Supplemental Sales Data (February 26, 2024) |
| 2 | Declaration of John L. Hansen (March 6, 2024) |
| 3 | Email from S. Waidelich (February 26, 2024) |
| 4 | Exhibit Not Used |
| 5 | Morgan Stanley Investor Presentation (March 22, 2023) |
| 6 | Email from S. Waidelich (March 4, 2024) |
| 7 | Trial Transcript, Day 1 (January 25, 2024) |
| 8 | Trial Transcript, Day 2 (January 26, 2024) |
| 9 | Trial Transcript, Day 3 (January 29, 2024) |
| 10 | JTX-005 |
| 11 | JTX-044 |
| 12 | PTX-013 (redacted) |
| 13 | PTX-050 (redacted) |
| 14 | PTX-072 |
| 15 | PTX-260 |
| 16 | PTX-536 |
| 17 | PTX-625 |

ACTIVE\1608366923.1

## I.      NATURE AND STAGE OF THE CASE AND SUMMARY OF THE ARGUMENT

The jury found that Neapco Holdings LLC and Neapco Drivelines LLC ("Neapco") infringed several valid claims of the '911 patent and awarded $4,005,620.00 in reasonable royalty damages to American Axle & Manufacturing, Inc. ("AAM").  D.I. 350–1.  AAM now respectfully requests that the Court grant it four types of post-trial relief:

A.      award AAM supplemental damages of $1,060.00 as agreed by Neapco;

B.      award AAM pre-judgment interest calculated using the prime rate and compounded quarterly continuously from the date of Neapco's first infringement, October 2014, through judgment on February 7, 2024;

C.      award AAM post-judgment interest calculated using the statutory rate and compounded annually; and

D.      permanently enjoin Neapco from continued infringement (with a carve-out for non-production, service replacement propshafts for the GM 31xxn program subject, instead, to an on-going royalty) or, absent an injunction, impose an on-going royalty at a rate in the range of $13.00/propshaft to $24.00/propshaft.

## II.     ARGUMENT

### A.      The parties agree that the Court should award $1,060.00 in supplemental damages.

The parties agree that the Court should award $1,060.00 in supplemental damages for sales that occurred up to the time of entry of the judgment but not reflected in the jury's verdict.  *See* Ex. 1, Neapco's Supplemental Sales Data (Feb. 26, 2024); Ex. 2, Hansen Decl. ¶ 7; Ex. 3, Email from S. Waidelich (Feb. 26, 2024).

### B.      The Court should award pre-judgment interest.

Pre-judgment interest "is the rule" for patent damages.  *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996).  The Court should award pre-judgment interest calculated continuously from the date of Neapco's first infringement through judgment using the prime rate and compounded quarterly as is standard in this District.

1

1.     **The Court should award pre-judgment interest on both the jury's damages award and AAM's supplemental damages.**

The Court should award pre-judgment interest on both the jury's damages award and AAM's supplemental damages. *See Mondis Tech. Ltd. v. Chimei Innolux Corp.*, No. 2:11-CV-378-JRG, 2012 WL 1554645, at *4 (E.D. Tex. Apr. 30, 2012) (awarding pre-judgment interest on supplemental damages); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, No. 2:10CV248, 2011 WL 4899922, at *6 (E.D. Va. Oct. 14, 2011), *aff'd*, 694 F.3d 1312 (Fed. Cir. 2012) (same).

2.     **The parties agree that pre-judgment interest should be calculated using the prime rate and compounded quarterly.**

The parties agree that the Court should award pre-judgment interest using the prime rate and compounded quarterly, which is "by far the most common practice in the District of Delaware." *Agrofresh Inc. v. Essentiv LLC*, No. CV 16-662 (MN), 2020 WL 7024867, at *26 (D. Del. Nov. 30, 2020) (collecting cases); Ex. 6, Email from S. Waidelich (March 4, 2024).

3.     **Pre-judgment interest should be calculated continuously from the date of Neapco's first infringement, October 2014, through judgment on February 7, 2024.**

The parties agree that pre-judgment interest should be calculated from Neapco's first sale in October 2014, forward. But Neapco contends that the Court should award pre-judgment interest only "for sales made from October 2014 through February 27, 2018" and nothing after that date. Ex. 6, Email from S. Waidelich (March 4, 2024). Neapco identified two events that supposedly limit pre-judgment interest: (1) on February 27, 2018, Judge Stark issued a (subsequently vacated) decision finding the asserted claims of the '911 patent were invalid under 35 U.S.C. § 101 (D.I. 219, 220); and, (2) the Court stayed this case between February 17, 2021, and June 30, 2022, pending a decision of the Supreme Court on AAM's petition for a writ of certiorari. D.I. 245, 251.

Neapco is wrong on both fronts. The purpose of pre-judgment interest is to place AAM in as good a position as it would have been in had Neapco entered into a reasonable royalty agreement

when its infringement began in October 2014.  *See Hughes Tool Co. v. Dresser Indus., Inc.*, 816

F.2d 1549, 1558 (Fed. Cir. 1987).   Pre-judgment interest should therefore accrue continuously

from that date notwithstanding the subsequent events identified by Neapco.

First, the Court's vacated February 2018 patent-eligibility decision has no bearing on pre-

judgment interest.  In *Hughes Tool*, the Federal Circuit held:

> An award of prejudgment interest to a patent owner for the period during which his
> patent was declared invalid is appropriate if, after exercising its discretion, the
> district court decides that such an award is necessary to put the patent owner in as
> good a position as he would have been in had the infringer entered into a reasonable
> royalty agreement when the infringement began.

*Hughes Tool*, 816 F.2d at 1558; *see also General Motors*, 461 U.S. at 655–56 ("An award of

interest from the time that the royalty payments would have been received merely serves to make

the patent owner whole.").  Here, the jury found that, had Neapco "entered into a reasonable royalty

agreement when the infringement began," it would have agreed on October 1, 2014, to pay AAM

a running royalty of $10.00/propshaft for all infringing propshafts irrespective of subsequent

events.  *Compare* Trial Tr. (Jan. 26, 2024) at 365:10–16 *and* D.I. 350-1, Verdict Form at 6.  Since

Neapco did not pay royalties when were they due, the only way to put AAM "in as good a position

as [it] would have been in" is to award AAM the time-value of money that it lost by calculating

pre-judgement interest continuously from October 2014 through judgment on February 7, 2024.

Neapco clings to Judge Stark's Section 101 decision, but the Federal Circuit vacated that

decision, and "the existence of a reversed district court opinion during the years before remand on

appeal cannot reasonably be a ground for denying prejudgment interest."  *Grp. One, Ltd. v.

Hallmark Cards, Inc.*, 407 F.3d 1297, 1308 n.8 (Fed. Cir. 2005).  *Mars, Inc. v. Coin Acceptors,

Inc.*, 513 F. Supp. 2d 128 (D.N.J. 2007) is instructive in this regard.  The *Mars* court initially found

non-infringement and invalidity, but later reconsidered and reversed those decisions.  *Id.* at 138.

The defendant argued that it "should not be liable for prejudgment interest during the period when the Court concluded that [the defendant] did not owe anything to [the patent owner]." *Id*. The *Mars* Court rejected that argument because, as here, "under the negotiated reasonable-royalty construct . . . , royalty payments would have been received from the time of infringement, regardless of subsequent litigation events not attributable to delay caused by either party." *Id*.

Second, the Court's short stay of this case from February 2021 (D.I. 245) to June 2022 (D.I. 251) during the pendency of AAM's petition for a writ of certiorari to the U.S. Supreme Court should not impact the Court's award of pre-judgment interest.   "[W]ithholding of prejudgment interest based on delay is the exception, not the rule." *Lummus Indus., Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 275 (Fed. Cir. 1988).  Stays, therefore, cannot support withholding pre-judgment interest unless the patent owner is responsible for the delay, and the delay is both undue and unjustified.  *Allen Archery, Inc. v. Browning Mfg. Co.*, 898 F.2d 787, 791 (Fed. Cir. 1990) (vacating district court's judgment denying pre-judgment interest on the basis of a 3-year stay).

Here, AAM did not cause the delay from February 2021 to June 2022.  It's true that AAM sought a stay (D.I. 239), but, at the time, both AAM and the Court expected a decision as early as April 2021.  D.I. 244 at 4–5; D.I. 245 at 3.  Neither AAM nor the Court could have predicted that, in May 2021, the Supreme Court would invite the U.S. Solicitor General to file an amicus brief, and that U.S. Solicitor General would wait another year, until May 2022, to do so.  Moreover, any delay is as much attributable to the COVID-19 pandemic as it is to the time spent by U.S. Solicitor General.  Jury trials were still suspended and the District had a backlog of cases to try.  *See* Standing Order Re: Criminal and Civil Jury Trial Suspension (Feb. 5, 2021).  In fact, the Court cited the pandemic as a basis to stay the case, finding it "imprudent to set a trial date" in view of "the ongoing impact of the coronavirus pandemic."  D.I. 245 at 3–4.  Simply put, any delay was

4

neither caused by AAM nor prejudicial to Neapco, and cannot justify withholding pre-judgment interest.

The length of the stay was also neither "undue" nor "unjustified." *Allen Archery*, 898 F.2d at 791. The 1-year, 4-month stay in this case is shorter than the 3-year stay of *Allen Archery*, and short relative to the 9-year pendency of this case. The stay was also "in the public interest because it furthered the possible and actual conservation of judicial and attorney resources." *Id.* at 792. As the Court held in granting the stay, "judicial economy favors avoiding the complexity and expenditure of resources that would result from this case proceeding simultaneously in both a trial court and the Supreme Court." D.I. 245 at 3. The length of the stay, moreover, is attributable to the time spent by U.S. Solicitor General—at the request of the U.S. Supreme Court—to file an amicus brief to provide the position of the United States on AAM's certiorari petition. That is certainly "in the public interest."

Several courts have applied these principles under similar circumstances and awarded pre-judgment interest over the period of time that the case was stayed. *See DDR Holdings, LLC v. Hotels.com, L.P.*, No. 2:06-CV-42-JRG, 2013 WL 3187163, at *3 (E.D. Tex. June 20, 2013) (awarding pre-judgment interest that accrued over 4-year stay); *Krippelz v. Ford Motor Co.*, 670 F. Supp. 2d 815, 819-20 (N.D. Ill. 2009) (same, 3-year stay). The Court should do the same here.

Neapco's attempt to exclude pre-judgment interest fails for an additional reason. There is no basis to withhold pre-judgment interest for the period after June 30, 2022, the date the Supreme Court denied AAM's petition for a writ of certiorari. D.I. 245; D.I. 251 at 5. By that date, the case was no longer stayed and the parties and the Court were proceeding toward a third round of summary judgment briefing (per Neapco's request, D.I. 251, 252) and trial. Still, rather than seeking to *toll* the accrual of pre-judgment interest, Neapco asks the Court to withhold it entirely

ACTIVE\1608366923.1

for the period after the Court's February 2018 decision.  Neapco's overreach is telling.

> **4.**     **Pre-judgment interest should be calculated by distributing the infringing sales across the applicable quarters for calculating interest.**

Neapco provided sales data by year and did not identify specific dates (or quarters) of each sale within each year.  PTX-536; PTX-625; JTX-044; Ex. 1, Neapco's Supplemental Sales Data (Feb. 26, 2024).  Thus, to calculate pre-judgment interest, Neapco's infringing sales for a given year should be distributed evenly across the applicable quarters of that year.  *See* Ex. 2, Hansen Decl. ¶¶ 6, 7, Ex. 1, Ex. 2.

> **5.**     **The Court should award $1,196,900.00 in pre-judgment interest.**

AAM submits with its Motion the Declaration of John Hansen (Ex. 2).  Mr. Hansen calculates pre-judgment interest consistent with the foregoing and prepared spreadsheets summarizing his calculations.  *Id.* ¶¶ 6, 7, Ex. 1, Ex. 2.  The Court should award a total of $1,196,900.00 in pre-judgment interest as calculated by Mr. Hansen.

> **C.**     **The Court should award post-judgment interest.**

The parties agree that the statutory post-judgment interest rate is 4.76% for the calendar week preceding February 7, 2024.  Ex. 3, Email from S. Waidelich Email (Feb. 26, 2024).  The Court should award post-judgment interest at that rate and compounded annually on the total of (i) $4,005,620.00 awarded by the jury, (ii) $1,060.00 in supplemental damages, and (iii) any pre-judgment interest awarded to AAM (which AAM submits should amount to $1,196,900.00).

> **D.**     **The Court should permanently enjoin Neapco against continued infringement with a limited carve-out or, alternatively, impose an on-going royalty.**

The Court should permanently enjoin Neapco against continued infringement of the '911 patent under the four-factor test set forth in *eBay v. MercExchange*, 547 U.S. 388, 391 (2006).  If the Court does not enjoin Neapco, the Court should grant AAM an on-going royalty for Neapco's continued infringement a rate in the range of $13.00/propshaft to $24.00/propshaft.

### 1.  The Court should permanently enjoin Neapco.

The Court should permanently enjoin Neapco from manufacturing and selling any accused propshaft and any propshaft no more than colorably different.  *See TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 881–883 (Fed. Cir. 2011) (*en banc*) (setting forth the "more than colorable differences" test for permanent injunctions).  To mitigate any hardship on Neapco and the public, the Court should carve out service replacement propshafts for the accused propshafts of the GM 31xxn program, and, instead, award AAM an on-going royalty for all such propshafts at a rate in the range of $13.00/propshaft to $24.00/propshaft.  *See infra* § II.D.2.

### a)  AAM will suffer irreparable harm.

The first *eBay* factor is a two-part test.  "To prove irreparable injury, a patentee must show 1) that absent an injunction, it will suffer irreparable harm, and 2) that a sufficiently strong casual nexus relates the alleged harm to the alleged infringement."  *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1383 (Fed. Cir. 2017).  That test is met here.

### (1)  AAM suffered irreparable harm and, absent an injunction, will continue to suffer irreparable harm.

"To determine whether the patentee will suffer irreparable harm absent an injunction, the court may consider factors such as the nature of competition between the patentee and the infringer, the willingness of a patentee to license, and any lost sales the patentee has proven."  *Presidio*, 875 F.3d at 1383.  The Court may also consider "erosion in reputation and brand distinction."  *Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1344 (Fed. Cir. 2013); *see also SynQor, Inc v. Artesyn Techs., Inc.*, No. 2:07-CV-497-TJW-CE, 2011 WL 238645, at *3 (E.D. Tex. Jan. 24, 2011) (finding irreparable harm because plaintiff would "suffer harm to its customer relationships, good will, and the opportunity to expand its business").  Each of these factors weigh toward a finding of irreparable harm.

7

First, there is no dispute that AAM and Neapco are direct competitors.  Trial Tr. (Jan. 25, 2024) at 118:12–15; Trial Tr. (Jan. 26, 2024) at 363:16-23; Trial Tr. (Jan. 29, 2024) at 13:13–17.  Indeed, both parties bid on the 31XXN program at issue in this case.  Trial Tr. (Jan. 26, 2024) at 476:21–477:6 (Neapco's expert admitting same).   Neapco caused AAM irreparable harm by forcing it "to compete against products that incorporate and infringe its own patented inventions." *Dynamics*, 717 F.3d at 1345.  And Neapco will continue to irreparably harm AAM if allowed to compete with AAM and win large propshaft programs leveraging AAM's patented technology.

The "design-win" market in which AAM and Neapco compete accentuates that harm.  AAM and Neapco do not compete for discrete, propshaft sales.  They compete for selection by OEMs to supply propshafts for entire vehicle product lines that remain in production for years. *See Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1336 (Fed. Cir. 2013) (summarizing "design-win" markets and affirming permanent injunction); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. CV 08-309-LPS, 2014 WL 2960035, at *1 (D. Del. June 30, 2014), *vacated on other grounds*, 843 F.3d 1315 (Fed. Cir. 2016) (same).

> [S]uppliers who prevail in design-win competitions enjoy two benefits beyond merely making sales.  First, a design-win effectively locks the OEM into using the winner's component part and thus temporarily immunizes the winner from competition.  Second, winners enjoy an "incumbency effect" making them more likely to win subsequent design competitions because the OEM's familiarity with the winning supplier creates goodwill.

*Broadcom*, 732 F.3d at 1336 (citations omitted); *id*. at 1337–1338 (affirming permanent injunction); *see also Power Integrations*, 2014 WL 2960035, at *1.

Neapco has and will continue to irreparably harm AAM in each of these additional ways.  Using AAM's technology, Neapco won GM's business for 31xxn program and locked AAM out of competition for over a decade.  Trial Tr. (Jan. 25, 2024) at 126:20–129:22.  As an incumbent to GM's business, Neapco then leveraged its success to win the bid for GM's T1xxn program, which

8

was "much larger than the 31xxn program" and "important . . . for Neapco to try to win."  Trial Tr. (Jan. 26, 2024) at 388:18–389:6; *id*. at 364:14–365:9, 390:18–391:14, 481:24–482:19.  For example, Gary Rogers testified that GM selected Neapco for the T1xxn program was because GM liked Neapco's quality from the 31xxn program: "[T]hat was a big point to them."  Trial Tr. (Jan. 26, 2024) at 391:7–14.  Neapco will continue to enjoy the benefits of this "incumbency effect" beyond these programs.

Second, AAM does not license its patents.  Trial Tr. (Jan. 25, 2024) at 129:23–130:6.

Third, AAM lost sales and revenue to Neapco—GM awarded the 31xxn propshaft business to Neapco, not AAM.  Trial Tr. (Jan. 25, 2024) at 126:20–129:22.  Neapco should not be allowed to continue to take revenue from AAM using AAM's technology.

Fourth, AAM lost brand recognition and good will.  *See Douglas Dynamics*, 717 F.3d at 1344; *SynQor*, 2011 WL 238645, at *3.  AAM was known in the automotive industry as an award-winning innovator and the only propshaft supplier that could reduce vibration by using tuned liners.  JTX-005, '911 patent; PTX-260 at -0114 ("American Axle and Manufacturing is a top innovator when dealing with the issues of Noise and Vibration"), -0115; Trial Tr. (Jan. 25, 2024 at 112:3–113:2, 115:6–116:15).  In contrast, before the 31xxn program, Neapco had never tuned liners or used them to reduce propshaft noise and vibration.  *See* Trial Tr. (Jan. 29, 2024) at 563:22–25; Tr. (Jan. 26, 2024) at 413:25–414:3.  It was GM, AAM's long-standing customer of its patented technology, that instructed Neapco to use tuned liners to fix its noise and vibration problems.  Trial Tr. (Jan. 26, 2024) at 401:6–11.  Courts routinely find irreparable harm in circumstances, like this, where a patent owner's "reputation as an innovator will certainly be damaged if customers found the same 'innovations' appearing in competitors'" products and its customers "believed it did not enforce its intellectual property rights."  *Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d

9

1336, 1344-1345 (Fed. Cir. 2013); *Wonderland Switzerland AG v. Evenflo Co., Inc.*, No. 1:20-CV-00727-JPM, 2023 WL 4098571, at *5 (D. Del. June 7, 2023) (granting permanent injunction, finding irreparable harm because infringement "caused [patent owner's] products to lose some of their 'distinctiveness and market allure' and has also harmed [patent owner's] reputation as an innovator in the marketplace"); *Power Integrations*, 2014 WL 2960035, at *1 (same).

Finally, AAM "suffer[ed] harm to its customer relationships . . . and the opportunity to expand its business." *SynQor*, 2011 WL 238645, at *3; *see also Wonderland*, 2023 WL 4098571, at *6 (granting permanent injunction, finding that defendant's infringement allowed it "to get its foot in the door with Walmart," "a major car seat retailer" that plaintiff had an "existing business relationship with"). Here, Mr. Jonas explained how AAM formed as "a spin-off of GM, so GM obviously knew us very well, a lot of our team came from GM and we have been supplying their propshafts ever since." Trial Tr. (Jan. 25, 2024) at 119:15–120:9. That is, until Neapco used AAM's technology, won GM's 31xxn program (Trial Tr. (Jan. 25, 2024) at 126:20–129:22), and then leveraged its success to win GM's T1xxn program, which was "[m]uch larger than the 31xxn program" and "important . . . for Neapco to try to win." Trial Tr. (Jan. 26, 2024) at 390:18–391:6; *id*. at 364:14–365:9, 480:1–21. This harm to AAM is likewise irreparable.

AAM suffered these harms over the past decade, and "it is proper for a district court to consider past harm to a patentee when determining if the patentee is entitled to an injunction." *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 449 F. App'x 923, 932 (Fed. Cir. 2011); *eBay*, 547 U.S. at 391 ("has *suffered* an irreparable injury") (emphasis added). Nor will the relevant circumstances change in the years to come: (i) AAM and Neapco remain direct competitors in a design-win marketplace; (ii) AAM will not license its patents, and, absent an injunction, (iii) AAM will continue to lose sales and revenue to Neapco, (iv) lose brand recognition and good will, and

ACTIVE\1608366923.1

(v) suffer harm to relationships with its customers, like GM, and the opportunity to expand business with them.  Absent an injunction, AAM will continue to suffer irreparable harm.

**(2)    A causal nexus relates AAM's irreparable harm to Neapco's infringement of the '911 patent.**

A "sufficiently strong casual nexus relates" AAM's irreparable harm to Neapco's infringement.  *Presidio*, 875 F.3d at 1383.  This "causal nexus" requirement is meant "to ensure that there is 'some connection' between the harm alleged and the infringing acts."  *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 640 (Fed. Cir. 2015).  That standard is easily met here.

There can be no credible dispute that Neapco's infringement is the cause of several forms of AAM's irreparable harm.  AAM and Neapco are competitors and AAM does not license its patented technology.  *Supra* § II.D.1.a.(1).  By infringing the '911 patent, Neapco caused AAM "to compete against products that incorporate and infringe its own patented inventions" and caused its "customers [to find] the same 'innovations' appearing in competitors'" products, things that the Federal Circuit has long held to be forms of irreparable harm.  *Dynamics*, 717 F.3d at 1344–1345; *Wonderland*, 2023 WL 4098571, at *4.

There is also more than at least "some connection" (and therefore a sufficient causal nexus), between Neapco's infringement and any sales- or market-related forms of irreparable harm.  There is clear evidence of demand for the inventions.  GM (Neapco's customer) requested that Neapco use tuned liners to solve its noise and vibration problems, which was "currently #1 issue on GM31XXN and has executive attention."  PTX-050; Trial Tr. (Jan. 26, 2024) at 401:6–11.  Courts find a causal nexus exists when, as here, customers ask the adjudicated infringer to include "[patented] features be included in the products supplied to them."  *Power Integrations*, 2014 WL 2960035, at *2; *Dominion Res. Inc. v. Alstom Grid, Inc.*, No. CV 15-224, 2016 WL 5674713, at *12 (E.D. Pa. Oct. 3, 2016) (customer's request "for the infringing functionality . . . shows 'some

11

connection' between demand for the infringing product and a potential lost sale of [patent owner]"), *vacated on other grounds*, 725 F. App'x 980 (Fed. Cir. 2018).

Neapco's conduct after GM's request confirms a demand for AAM's patented technology. Neapco looked to and relied on the inventions of the '911 patent because, in the words of Neapco's engineers, "[o]bviously knowingly or unknowingly they [AAM] have solved the issue with an extremely low cost solution" (D.I. 313-11 at p. 187, PTX-010 (unredacted)) and "this is what we are trying to achieve with the GM31XXN liners … to attenuate both shell modes (which all liners do to some degree) and a targeted bending mode frequency."  PTX-013; D.I. 351 at pp. 35–36, PTX-013 (unredacted); *see also* D.I. 313-11 at pp. 168–171 (AAM's Opposition to Neapco's MIL No. 2).  At the very least, the evidence shows that there is "some connection" between Neapco's infringement and AAM's sales- and market-related harm.  That is enough.

> **b)** **Remedies at law, including monetary damages, are inadequate to compensate AAM for its injury.**

Remedies at law, including monetary damages, are inadequate to compensate AAM for its irreparable injury because the harm AAM suffered is difficult, if not impossible, to quantify.

First, AAM suffered significant, reputational harm due to Neapco's infringement.  *Supra* § II.D.1.a.  For example, Neapco's infringement caused the industry to assume that AAM's propshafts "do not contain unique or innovative technologies," or that AAM "fail[s] to enforce its intellectual property rights."  *Wonderland*, 2023 WL 4098571, at *7.  "This reputational harm is difficult or impossible to quantify, and cannot be adequately compensated by awarding monetary damages."  *Id*. (granting permanent injunction); *see also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010) ("loss of market share, brand recognition, and customer goodwill" "frequently defy attempts at valuation" and are "particularly difficult to quantify"); *Power Integrations*, 2014 WL 2960035, at *2 (granting permanent injunction, finding that "damage to

ACTIVE\1608366923.1

[patent owner's] reputation as an innovator" is "not reparable by remedies available at law").

Second, AAM suffered harm to its customer relationships and the opportunity to expand its business, including with GM. *Supra* § II.D.1.a. This harm, too, is difficult, if not impossible to quantify. The *Wonderland* case is instructive. The patent owner (Wonderland) had a long-standing relationship with Walmart and the adjudicated infringer (Evenflow) leveraged its infringement to "create a new relationship with Walmart" and "successfully place its product on Walmart's shelves." *Id*. at *6. The district court could not quantify the harm to the patent owner "from having to defend its existing business relationship," and found that it would be "impossible to adequately compensate with monetary damages." *Id*. Here, like the adjudicated infringer in *Wonderland*, Neapco leveraged its infringement to create a new relationship with GM, disrupting AAM's relationship with GM in the process. And, like in *Wonderland*, it is impossible to quantify the harm AAM suffered by having to defend its relationship in the face of Neapco's infringement.

Lastly, even the sales- and market-based harms to AAM are difficult, if not impossible, to quantify. As the Federal Circuit explained in *Broadcom*, the design-win marketplace allows Neapco to enjoy benefits "beyond merely making sales." 732 F.3d at 1336. Rather, Neapco additionally locked GM into purchasing its propshafts for the entirety of the 31xxn program (excluding AAM from competition), and gained an "incumbency effect" making Neapco more likely to win subsequent design competitions between Neapco and AAM, such as for GM's T1xxn program. *Id*. These unique harms to AAM as a result of the design-win marketplace are impossible to quantify and cannot be compensated by payment of money damages. *Id*.; *see also Broadcom*, 732 F.3d at 1336. *Power Integrations*, 2014 WL 2960035, at *2. Allowing Neapco to continue to infringe *to win additional business and develop and cultivate business relationships with OEMs* would irreparably harm AAM. This factor strongly favors a permanent injunction.

13

**c)      The balance of hardships favors a permanent injunction.**

The third *eBay* factor "assesses the relative effect of granting or denying an injunction on the parties." *i4i*, 598 F.3d at 862. Here, the balance of hardships tips in AAM's favor.

"[R]equiring [a patent owner] to compete against its own patented invention, with the resultant harms described above, places a substantial hardship on [the patent owner]." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011); *Wonderland*, 2023 WL 4098571, at *7. Unless the Court enjoins Neapco's continued infringement, AAM suffer this "substantial hardship."

Neapco, on the other hand, will suffer little to no hardship for several reasons. First, the Court should disregard any alleged hardship tied to Neapco's infringement. *See Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986).

Second, according to Neapco, "the 31XXN program . . . is now largely concluded" and Neapco is only producing service replacement propshafts carved out of the scope of AAM's proposed injunction. Ex. 3, Email from S. Waidelich (Feb. 26, 2024). Thus, Neapco cannot claim any hardship if enjoined from manufacturing and selling propshafts for the 31xxn program. *Spectralytics, Inc. v. Cordis Corp.*, 650 F. Supp. 2d 900, 921 (D. Minn. 2009) (granting permanent injunction, finding that based on defendants' "assertion that they no longer use the '277 patent, it follows that an injunction will impose no great hardship on them and will not disserve the public interest"), *aff'd in part, vacated in part on other grounds*, 649 F.3d 1336 (Fed. Cir. 2011).

Third, even if the 31xxn program continued, "two-thirds of all propshafts in the 31xxn are 4-inch that are propshafts are not accused in this case." Trial Tr. (Jan. 26, 2024) at 445:6–21. Moreover, Neapco's revenue from sales of the accused propshafts is a small fraction of its overall sales revenue. In 2020 and 2021, Neapco's sales of the accused propshafts were around $6.0M and $5.4M—less than 1% of its overall revenue for those years, $698M and $797M. *Compare*

14

PTX-625 *and* Ex. 5, Morgan Stanley Investor Presentation (March 22, 2023) at 28; *see Wonderland*, 2023 WL 4098571, at *8 (finding that 8% of net sales and 5–6% of net profit, "[w]hile this is not an insignificant portion of [adjudicated infringer's] business, it is not such a large portion that its loss will pose an insurmountable hardship if an injunction is imposed").

Lastly, Neapco presented evidence that there are non-infringing alternatives to the '911 patent.  Trial Tr. (Jan. 26, 2024) at 451:13–454:9; Trial Tr. (Jan. 29, 2024) at 637:25–638:13.  If Neapco "had a non-infringing alternative which it could easily deliver to the market, then the balance of hardships would suggest that [Neapco] should halt infringement and pursue a lawful course of market conduct." *Douglas Dynamics*, 717 F.3d at 1345; *see also Wonderland*, 2023 WL 4098571, at *8.  The third *eBay* factor favors a permanent injunction.

### d)      The public interest would not be disserved.

The public interest would be served, and certainly not disserved, by permanently enjoining Neapco from continued infringement.  First, to encourage innovation, there is a "strong public policy favoring the enforcement of patent rights." *PPG Industries, Inc. v. Guardian Industries Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996).  "As a result, the public interest nearly always weighs in favor of protecting property rights . . . ." *Apple*, 809 F.3d at 647.  Since its founding, AAM has "invested more than $2 billion" in research and development of cutting-edge technology like the inventions of the '911 patent.  Trial Tr. (Jan. 25, 2024) at 116:2–9.  AAM's investments "must be encouraged and protected by the exclusionary rights conveyed in valid patents." *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931–32 (Fed. Cir. 2012).

Second, enjoining Neapco will have no impact on public health or safety. *See Cordis Corp. v. Bos. Sci. Corp.*, 99 F. App'x 928, 935 (Fed. Cir. 2004) ("[F]or good reason, courts have refused to permanently enjoin activities that would injure the public health.").

ACTIVE\1608366923.1

Third, enjoining Neapco will not even threaten the public's access to propshafts, including those intended for GM's 31xxn vehicles.  According to Neapco, "the 31XXN program . . . is now largely concluded" and Neapco is only producing service replacement propshafts carved out of the scope of AAM's proposed injunction.   Ex. 3, Email from S. Waidelich (Feb. 26, 2024); *Spectralytics*, 650 F. Supp. 2d at 921.  AAM also has the ability and capacity to produce propshafts with tuned liners for GM and other programs.  Trial Tr. (Jan. 25, 2024) at 129:1–8; Trial Tr. (Jan. 26, 2024) at 352:4–354:19.  Moreover, as discussed above in Section II.D.1.c, Neapco argued that there are acceptable non-infringing alternatives.  Trial Tr. (Jan. 26, 2024) at 451:13–454:9; Tr. (Jan. 29, 2024) at 637:25–638:13.  The public interest will not be disserved because the public will still be able to purchase propshafts covered by the '911 patent (from AAM or, for 31xxn service replacement propshafts, from Neapco) or non-infringing propshafts (from Neapco).  *Wonderland*, 2023 WL 4098571, at *9 (finding the public interest served by permanent injunction because "[c]ustomers will still be able to purchase many different types of car seats in different price bands, including Evenflo's non-infringing car seat models.").

Lastly, AAM proposes a narrowly-tailored injunction to minimize any harm to the public.  *See i4i*, 598 F.3d at 863 (affirming permanent injunction because public interest was served by "the narrow scope of the injunction and the public's general interest in upholding patent rights"); *Apple*, 809 F.3d at 647 (public interest was served by "narrow feature-based injunction commensurate in scope with [patent owner's] monopoly rights").  AAM requests an injunction commensurate in scope with its patent rights, that is, one that prevents Neapco from manufacturing and selling infringing propshafts (except for 31xxn service replacement propshafts) and propshafts no more than colorably different.  *See TiVo*, 646 F.3d at 881–883.  Neapco's other driveline products, and even Neapco's other propshafts that are colorably different than those adjudicated

16

by a jury to infringe the '911 patent, are outside of the scope of the proposed injunction.

The fourth *eBay* factor favors a permanent injunction.

> **2.      The Court should, alternatively, impose an on-going royalty for Neapco's continued infringement at a rate in the range of $13.00/propshaft to $24.00/propshaft.**

To the extent the Court declines to permanently enjoin Neapco from continued infringement, the Court should impose an on-going royalty at a rate in the range of $13.00/propshaft to $24.00/propshaft on all accused propshafts and all propshafts no more than colorably different.  "[T]he Federal Circuit has indicated that a prevailing patentee should receive compensation for any continuing infringement."  *ArcherDX, LLC v. Qiagen Scis., LLC*, No. CV 18-1019 (MN), 2022 WL 4597877, at *14 (D. Del. Sept. 30, 2022) (citing *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314-15 (Fed. Cir. 2007)); *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1379 (Fed. Cir. 2010) (holding than "[a]n award of an ongoing royalty is appropriate" where "[patent owner] has not been compensated for [adjudicated infringer's] continuing infringement").  Here, the jury awarded AAM reasonable royalty damages in the form of a running royalty.  *Compare* Trial Tr. (Jan. 26, 2024) at 365:10–16 *and* D.I. 350-1, Verdict Form at 6.  Thus, absent a permanent injunction, awarding AAM an on-going royalty is necessary to compensate AAM for Neapco's continued infringement.

As for the rate, "post-verdict factors should drive the ongoing royalty rate calculation in determining whether such a rate should be different from the jury's rate."  *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1297 (Fed. Cir. 2018).  That is because "there is a 'fundamental difference' between 'a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement'" and post-verdict factors impact "what a hypothetical negotiation would look like *after* the prior infringement verdict."  *Id*. (quoting *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008) (emphasis in original)).  Those factors include the "change in the parties'

bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability," and "changed economic circumstances, such as changes related to the market for the patented products." *Id.* Here, those post-verdict factors favor an upward adjustment of the reasonable royalty rate awarded by the jury, $10.00/propshaft, to an on-going royalty rate in the range of $13.00/propshaft to $24.00/propshaft.

First, there can be no dispute that the jury verdict strengthened AAM's bargaining position and weakened Neapco's. "When patent claims are held to be not invalid and infringed, this amounts to a 'substantial shift in the bargaining position of the parties.'" *XY*, 890 F.3d at 1297 (quoting *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1342 (Fed. Cir. 2012) (affirming district court's on-going royalty award that "may seem high" because "the jury verdict placed [patent owner] in a stronger bargaining position")).  The jury verdict therefore favors an upward adjustment to its reasonable royalty rate.

Second, several changed economic circumstances favor an upward adjustment.  Having used AAM's technology to win GM's business for the 31xxn program (Trial Tr. (Jan. 25, 2024) at 126:20–129:22), Neapco "effectively lock[ed]" itself into a decade-long contract to supply propshafts for that program. *Broadcom*, 732 F.3d at 1336. By this point, the design of Neapco's propshafts are complete. *See* Trial Tr. (Jan. 26, 2024) at 454:14–455:3 (Neapco's damages expert describing the lengthy design process: "It's not a quick fix.").  Neapco is therefore under significant pressure to continue to use the inventions of the '911 patent, and that pressure supports an upward adjustment to the on-going royalty rate.

For similar reasons, Neapco's design-win of GM's business for the T1xxn program favors an upward adjustment.  Neapco leveraged its success on the 31xxn program to win the bid for T1xxn program, which was "much larger than the 31xxn program" and "important . . . for Neapco

18

to try to win." Trial Tr. (Jan. 26, 2024) at 390:18–391:6; *id.* at 364:14–365:9, 480:1–21. This warrants an upward adjustment because AAM is incentivized to mitigate, and Neapco is incentivized to maintain, the benefits that Neapco enjoys from this "incumbency effect," including by negotiating a higher royalty rate. *Broadcom*, 732 F.3d at 1336.

"[C]ourts frequently impose a post-verdict ongoing royalty rate that is higher than the reasonable royalty found at trial for past infringement." *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, No. CV 04-876-GMS, 2014 WL 1457797, at *4 (D. Del. Apr. 14, 2014) (awarding on-going royalties at a rate of 1% to 1.25%, higher than the jury's royalty rate of 0.64%); *see also id.* n.8 (collecting cases); *see also Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1370 (Fed. Cir. 2017) (affirming award of an on-going royalty at twice the royalty rate found by the jury); *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 670 F.3d 1171, 1192–93 (Fed. Cir. 2012) (affirming award of an on-going royalty at a rate of 12.5% to 20%, higher the jury's rate of 10%), *vacated in part on other grounds*, 476 Fed. Appx. 747 (Fed. Cir. June 14, 2012) (*en banc*) . The Court should do the same here.

Several *Georgia-Pacific* factors also support an upward adjustment. *See Arctic Cat*, 876 F.3d at 1370 (applying *Georgia-Pacific* factors in determining an on-going royalty rate). Even before the verdict, (i) Neapco and GM valued the use of AAM's patented technology at $11.94/propshaft (*see* PTX-072; Trial Tr. (Jan. 26, 2024) at 365:21–366:13, 472:19–473:1) (*Georgia-Pacific* factor 11); (ii) Neapco saved up to $11.45/propshaft in costs by using AAM's patented technology (*see* Tr. (Jan. 26, 2024) at 364:15–365:20, 366:6–13) (*Georgia-Pacific* factors 9 and 10), and (iii) AAM lost $24.57/propshaft in profit due to Neapco' infringement (*see* Trial Tr. (Jan. 26, 2024) at 359:24–360:13, 363:16–2, 366:6–13) (*Georgia-Pacific* factor 5). These factors weigh in favor of an on-going royalty rate that is higher than the pre-verdict rate awarded

19

by the jury, and support a rate in the range of $13.00/propshaft to $24.00/propshaft.

## III.    CONCLUSION

The Court should grant AAM's motions.

Dated:  March 26, 2024

OF COUNSEL:

James R. Nuttall
Katherine H. Tellez
John L. Abramic
Robert F. Kappers
**STEPTOE LLP**
227 West Monroe, Suite 4700
Chicago, IL 60606
(312) 577-1300

Boyd Cloern
**STEPTOE LLP**
1330 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 429-6407
bcloern@steptoe.com

Respectfully Submitted,

*/s/ Jeff Castellano*
Brian A. Biggs (DE Bar No. 5591)
Jeff Castellano (DE Bar No. 4837)
**DLA Piper LLP (US)**
1201 N. Market St.
Suite 2100
Wilmington, DE 19801
(302) 468-5671
brian.biggs@us.dlapiper.com
jeff.castellano@us.dlapiper.com

*Attorneys for American Axle & Manufacturing, Inc.*

20